**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DR. RONALD J. WYNN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** |
| **BOARD OF EDUCATION OF SCHOOL** | ) | |
| **DISTRICT NO. 159, COOK COUNTY,** | ) | |
| **ILLINOIS,** | ) | |
| | ) | **PLAINTIFF DEMANDS** |
| | ) | **TRIAL BY JURY** |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, DR. RONALD J. WYNN ("DR. WYNN"), by his attorneys, Elaine K.B. Siegel and

Associates, P.C., complains as follows against Defendant BOARD OF EDUCATION OF

THE SCHOOL DISTRICT NO. 159 ("Board").

## PARTIES

1.    Plaintiff, Dr. Wynn, is a resident of the County of Lake, State of Illinois.  At all times

relevant hereto, Dr. Wynn was employed by the Board as the Superintendent of School

District 159. At all times relevant hereto, Dr. Wynn worked under the direction of

Defendant Board.

2.    Defendant Board is a body politic and corporate, organized pursuant to the Illinois School

Code, 150 ILCS 5/11, which has offices and does business in the County of Cook, State

of Illinois.

3.    Pursuant to Illinois School Code, 105 ILCS 5/10-10 et seq., the Board is the duly

constituted and elected governing body of Elementary School District 159 ("District").

The Board governs the District. The District is located in Matteson, Cook County,

Illinois. Over 2,000 students attend the four elementary schools and one middle school in

the District.

## JURISDICTION AND VENUE

4. Federal jurisdiction arises under the subject matter of this Complaint pursuant to 28 U.S.C. § 1331; and 42 U.S.C. §1983 (Section 1983). There is supplemental jurisdiction over the Illinois state law claims pursuant to 28 U.S.C. §1367.

5. Venue of this action lies in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. §1391.

6. Venue is proper in that the Defendant has offices, and does business in the County of Cook, State of Illinois, where the cause of action arose.

## FACTS

### DR. WYNN'S EMPLOYMENT CONTRACT

7. On or about April 8, 2008, the Board hired Dr. Wynn as the Superintendent of the District.

8. On or about April 8, 2008, Dr. Wynn and the District entered into a Superintendent Contract ("Contract") requiring that Dr. Wynn perform duties for the Board including; "make recommendations to the Board concerning the budget, building plans, the selection of teachers and other employees, the selection of textbooks, instructional materials, and courses of study, supervise matters of publicity and press releases, assist in keeping the records and accounts of the Board; aid in making reports required of the Board, and in general, perform such other duties as are customarily performed by a Superintendent of Schools," for a period of three years, commencing July 1, 2008, and terminating June 30, 2011. A true and correct copy of the Contract is attached as Exhibit A.

2

9.      Section 10-23.8 of the Illinois School Code authorizes school districts to employ general superintendents under multi-year contracts. 105 ILCS 5/10-23.8. That section authorizes a, "…school district to employ a superintendent under either a contract for a period not exceeding one year or a performance-based contract for a period not exceeding 5 years." Section 10-23.8 further states,

> Performance-based contracts shall be linked to student performance and academic improvement within the schools of the districts. No performance-based contract shall be extended or rolled-over prior to its scheduled expiration unless all the performance and improvement goals contained in the contract have been met. Each performance-based contract shall include the goals and indicators of student performance and academic improvement determined and used by the local school board to measure the performance and effectiveness of the superintendent and such other information as the local school board may determine.

> By accepting the terms of a multi-year contract, the superintendent waives all rights granted him or her under Sections 24-11 through 24-16 of this Act only for the term of the multi-year contract. Upon acceptance of a multi-year contract, the superintendent shall not lose any previously acquired tenure credit with the district. 105 ILCS 5/10-23.8.

*See also Bd. of Ed. of Proviso Township High School Dist. No. 209 v. Jackson*, 2010 Ill. App. LEXIS 274, at *1-2 (1st Dist. 2008) (the appellate court rejected the school district's argument that the superintendent's multi-year contract was null and void, and "unenforceable because it failed to enumerate goals with which to measure the superintendent's performance as required by section 10-23.8 of the Code…")

10.     Dr. Wynn's Contract incorporates and is governed by the laws of the State of Illinois.

11.     Paragraph I of the Contract provides:

> The Superintendent is hereby employed and he hereby agrees to serve the School District as Superintendent of Schools, subject to the direction of the Board of Education, during the period commencing July 1, 2008, and *terminating June 30, 2011*, or as may be extended as provided herein…(Emphasis added.)

3

12.  Paragraph 10 of the Contract states that the Contract is a performance-based Contract.

13.  Paragraph 13 of the Contract provides for termination of the Contract only in the event of:

A.  Mutual agreement of the parties.

B.  Retirement.

C.  Resignation, provided, however, the Superintendent gives the Board at least ninety (90) days written notice of the proposed resignation.

D.  Discharge for cause. "For cause" shall mean any conduct, act, or failure to act by the Superintendent which is seriously prejudicial to the best interests of the School District. Reasons for discharge for cause will be given in writing to the Superintendent, *who will be entitled to a notice and a hearing before the Board in closed session*. (Emphasis added.)

E.  Failure to substantially comply with the terms and conditions of this Agreement.

F.  Failure to attain the student performance and academic improvement goals set forth in this Agreement, provided the following (1) attainment of the goals are subject to the Superintendent being empowered to exercise full control and authority as established by statute and District Policies *without interference, intervention, and/or forced reversal*; (2) social and parental inhibitors beyond the control of the Superintendent or the District, or conditions beyond the ability of District personnel to control or change shall not be construed or interpreted as the failure of the Superintendent to attain the goals; (3) *the actions (omission or commission) of employees under the Superintendent's charge, and in opposition or contrary to District policy or the Superintendent's guidance shall not be construed or interpreted as the Superintendent's failure to attain the goals*; and (4) that it shall not be construed or interpreted as the Superintendent's failure to attain the goals if the State Legislature, the Board and/or the voting public fail to fund the program support targeting the goals, or to support and authorize personnel additions or changes recommended by the Superintendent in his attempts to attain the goals. (Emphasis added.)

14.  According to the Contract, both the Board and Dr. Wynn have an obligation to establish specific academic improvement goals ("goals"). Paragraph 10 of the Contract states:

> This Contract is a performance-based contract. *Student performance and academic improvement goals shall be established by the mutual agreement of the Superintendent and the Board, and shall be as approved and determined by the Board, by July 1, of every year of this contract, with the exception of this first contract year, for the 2008-2009 contract year, the Superintendent and Board shall establish goals not later than October 1, 2008.* Said goals, *once*

4

*approved and determined by the Board*, shall be incorporated into and made a part of this Contract. The Superintendent shall meet all of said goals during such time period as the Superintendent and the Board may agree. All of said goals shall be linked to student performance and academic improvement within the School District. The foregoing goals shall be used by the Board to measure the performance and effectiveness of the Superintendent, along with such other information as the Board may determine. This Agreement may not be extended unless all then-applicable goals have been attained. (Emphasis added.)

**PAMELA WALKER'S INTERFERENCE WITH DR. WYNN'S CONTRACT**

15.    Among the duties of the Board, is the duty set forth in Section 10-21.4 of the Illinois School Code, "to employ a superintendent who shall have charge of the administration of the schools under the direction of the board of education." 105 ILCS 5/10-21.4.

16.    Among the duties of the Board, is the duty set forth in Section 10-16.7 of the Illinois School Code, "the school board shall evaluate the superintendent in his or her administration of school board policies and his or her stewardship of the assets of the district."  105 ILCS 5/10-16.7.

17.    The Board voted to hire Dr. Wynn in approximately March, 2008, by a 6-1 vote.

18.    On July 1, 2009, Dr. Wynn began the second year of this Contract term.

19.    Beginning in approximately September 2008, Dr. Wynn started receiving frequent, almost daily, telephone calls from Board member Pamela Walker ("Walker"). During these telephone calls Walker would ask Dr. Wynn to take actions that required the full approval or disapproval of the entire Board. Dr. Wynn told Walker that he would only carry out those requests if the Board voted for the actions to occur. Walker became upset with Dr. Wynn because he would not carry out her personal requests.

20.    Walker began threatening Dr. Wynn that she would "pull his contract" if he didn't do as she "directed" him to do. Walker began making insulting and degrading comments to Dr. Wynn on a regular and ongoing basis. For example, on or about January 17, 2009, as a

5

courtesy, Dr. Wynn invited members of the Board to his home for dinner, and Walker responded, "I am not coming to your house to eat your food and drink your liquor when I am going to pull your contract." This statement was made openly and in the presence of other Board members in closed session. On or about October 21, 2009, at a Board meeting, Walker told Dr. Wynn, "I didn't want you anyway," in reference to personnel matters.

21.     Dr. Wynn became increasingly concerned about Walker's comments and conduct, and reported his concerns to Nate Motton, then President of the Board. Dr. Wynn also reported Walker's threats and intimidation tactics to other Board members including, Rose Lee (current Board President), Keith Brown, and Russell Johnson.

22.     On information and belief, Walker influenced at least two other Board members to oppose Dr. Wynn's continued employment under his Contract.

23.     Between April 2009 and October 2009, the Board composition changed. Two new Board members were elected, Cheryl Mallard and Demetria Brown, and one incumbent was re-elected, Keith Brown, in April 2009. In approximately October 2009, Keith Brown, the elected incumbent resigned from the Board. A replacement Board member, Stacey Neat, was appointed in December 2009. Approximately three weeks later, Stacey Neat, the newly appointed replacement member, voted to support the resolution of the intent to not rehire Dr. Wynn for the 2010-2011 school year.

## PERFORMANCE GOALS UNDER THE CONTRACT

24.     Pursuant to his Contract, Dr. Wynn promptly began performing his contractual duty to set specific performance goals. Dr. Wynn attempted numerous times to schedule sessions for setting performance goals with the Board, to discuss and present the Board with proposed

goals. This began on or about August 4, 2008, with Dr. Marvin Edwards, a professor at Aurora College and a retired superintendent who works as an educational consultant, whom Dr. Wynn hired as the facilitator. However, the Board continuously delayed the discussion and implementation of the goals. Upon information and belief, Walker did not want Dr. Edwards to return and conduct further training. Dr. Wynn began to pursue other facilitators. Walker did not want any of the individuals whom Dr. Wynn recommended. Therefore, Walker and her niece, Board member Asia Norwood, selected Mr. Jeff Cohn from the Illinois State Board of Education to facilitate the continuance of the performance goal setting session. That meeting was scheduled for August 15, 2009. Walker did not attend that session.

25.    The Board could not finalize Dr. Wynn's goals until the Board had approved its own goals, because the Superintendent goals and the Board goals are to run parallel and to track the other.

26.    Despite the Board's failure to adhere to the Contract, eventually, Dr. Wynn succeeded in scheduling three meetings with the Board to develop the goals, which were held on or about August 15, 2009, October 26, 2009, and December 15, 2009. Walker and Keith Brown were absent on August 15, 2009. Upon information and belief, other Board members were present at each meeting.

27.    The Board approved the goals for Dr. Wynn on or about January 13, 2010.

28.    Also on or about January 13, 2010, at the same time the Board approved Dr. Wynn's goals, the Board adopted a Resolution Authorizing Issuance of Notice of Intent Not to Renew Superintendent's Contract. Attached as Exhibit B is a copy of the Resolution.

29.    On or about January 28, 2010, Dr. Wynn submitted to the Board notice of his request for

7

an annual performance evaluation and his annual and long-term goals and objectives, as required by the Contract. A true and correct copy of that letter is attached as Exhibit C.

## THE BOARD'S ATTEMPTS TO REMOVE DR. WYNN, IN VIOLATION OF HIS CONTRACT

30.     By undated letter, received by Dr. Wynn on or about January 27, 2010, the Board stated:

> Pursuant to action of the Board of Education of Elementary School District No. 159, Cook County, Illinois and the Superintendent's Contract ("Contract") governing your employment by the Board, this is to notify you that, to the extent that you have attained all applicable performance goals, it is the intent of the Board not to renew the Contract for either the 2010-2011 contract year or the 2011-2012 contract year.

A true and correct copy of that undated letter is attached as Exhibit D.

31.     Dr. Wynn proceeded to perform the second year of his three-year performance-based Contract, with no formal action to extend the term of the Contract.

32.     On January 29, 2010, pursuant to his Contract, Dr. Wynn requested a meeting with the Board to discuss its decision not to renew the Contract for either the 2010-2011 or the 2011-2012 contract years. A true and correct copy of that letter is attached as Exhibit E.

33.     On or about February 25, 2010, Dr. Wynn appeared before the Board on the issue of his Contract at a special Board meeting. Dr. Wynn and his counsel addressed the Board's claim that he did not have a valid multi-year Contract, and that the Board could terminate his Contract at the end of the 2009-2010 Contract year. Dr. Wynn confirmed his expectation that the Board would perform their obligations under the Contract. Dr. Wynn confirmed his ability and willingness to perform his duties under the multi-year Contract. The Board did not raise any performance deficiencies with Dr. Wynn.

34.     Then, by letter dated March 5, 2010, Dr. Wynn received from the Board, a document titled "Causes For Dismissal If Not Remedied," filled with false and pretextual

8

allegations, including "failure to timely provide suggested annual personal goals." A true and correct copy of that letter is attached as Exhibit F.

**DR. WYNN'S MYSTERIOUS SUSPENSION**

35. Less than two weeks later, on or about March 18, 2010, the Board voted to suspend Dr. Wynn, indefinitely, without any form of notice, written or otherwise; and without a hearing. This action regarding Dr. Wynn's employment was not on the agenda for the Board's March 18, 2010 meeting.

36. Six days later, on or about March 24, 2010, the Board adopted a Written Notice Of Charges For The Dismissal Of Dr. Ronald J. Wynn As Superintendent Of Schools For Elementary School District Number 159" The Written Notice states, among other things, that Dr. Wynn has violated the terms and conditions of his Contract providing sufficient cause for dismissal. A copy of the March 24, 2010 Written Notice of the Board is attached as Exhibit G.

37. A dismissal hearing was then scheduled for April 19, 2010 and was then cancelled by the Board.

38. By letter dated April 1, 2010, Dr. Wynn received a copy of a Bill of Particulars regarding his dismissal. A copy of the Bill of Particulars from the Board is attached as Exhibit H.

39. Dr. Wynn disputed the Charges and Bill of Particulars, as false and pretextual. Dr. Wynn's dismissal hearing was rescheduled to April 28, 2010.

40. On or about April 26, 2010, the Board continued the dismissal hearing of Dr. Wynn indefinitely. The Board failed and refused to hold the hearing.

**LIFTING OF THE SUSPENSION AND DR. WYNN'S RETURN TO WORK**

41. By letter dated April 29, 2010, the Board rescinded Dr. Wynn's suspension and required

9

him to return to work on Monday, May 3, 2010, stating:

> Dr. Wynn will not be returning as Superintendent, however, he will be working in an administrative capacity at the direction of the Interim Superintendent, Dr. Barbara Mason. Dr. Wynn will of course receive the same salary and benefits that he is currently receiving under his employment contract.

A true and correct copy of that April 29, 2010 letter is attached as Exhibit I.

42. Upon information and belief, Dr. Wynn's replacement, Interim Superintendent Mason, does not hold a doctorate in education.

43. Upon his return in May 2010, the Board failed to give Dr. Wynn any guidance or direction as to what his responsibilities would be, since he was told that he was not "returning as Superintendent." *See* Exhibit I. Dr. Wynn was assigned to Colin Powell Middle School with no directions. He took initiative to help with lunchroom duty and clean tables, counseled students, bus duty, and observed some classes. Dr. Wynn was not given or allowed full access to use the District group e-mail system. All other District employees had access to this group e-mail system. Dr. Wynn was also denied use of a District cell phone. The Board also denied Dr. Wynn's attendance at the District commencement ceremonies.

44. Rumors began to circulate around the District and community regarding Dr. Wynn, and his employment situation, which have damaged his reputation, and were an attempt to injure his integrity and offend his sense of decency.

**DR. WYNN'S TERMINATION**

45. On or about Friday, June 11, 2010, the South Town Star newspaper published an electronic article stating that the Board "voted to fire Supt. Ronald Wynn after a closed session Wednesday night." A true and correct copy of that electronic article is attached as Exhibit J.

46.     Dr. Wynn was not notified by the Board of its June 9, 2010 action to terminate him until he received a letter dated June 11, 2010, from the Board, stating that the Board had voted to non-renew the Contract for the 2010-2011 school year. A true and correct copy of that June 11, 2010 letter is attached as Exhibit K.

47.     Dr. Wynn was not provided with any notice, written or otherwise, that the Board would be taking such action at that June 9, 2010 meeting, in violation of his Contract, his due process rights, and the Illinois Open Meetings Act. Dr. Wynn's employment was not on the agenda for the June 9, 2010 Board meeting.

48.     Dr. Wynn was not afforded a dismissal hearing prior to his termination. Hearings were never held on the Board's March 24, 2010 Notice of Charges or its April 1, 2010 Bill of Particulars.

## COUNT I
## DECLARATORY JUDGMENT

49.     Plaintiff repeats and re-alleges Paragraphs 1-48 of this Complaint as though fully set forth herein as Paragraphs 1-48 of Count I of this Complaint.

50.     Dr. Wynn seeks a judicial determination that the Contract between Dr. Wynn and the Board is valid, conforms with Section 10-23.8 of the Illinois School Code, 105 ILCS 5/10-23.8, and that as a result, Dr. Wynn has a contract to serve as Superintendent of the District between July 1, 2008 and June 30, 2011.

WHEREFORE, Dr. Wynn, requests that this Court enter a declaratory judgment against the Defendant Board declaring that the Contract is valid and enforceable superintendent's contract with a term from between July 1, 2008 and June 30, 2011; order Defendant Board to honor its Contract with Dr. Wynn; and award such other relief as this Court deems just and equitable.

## COUNT II
## BREACH OF EXPRESS CONTRACT

51.   Plaintiff repeats and re-alleges Paragraphs 1-50 of this Complaint as though fully set forth herein as Paragraphs 1-50 of Count II of this Complaint.

52.   On April 8, 2008, the Board offered Dr. Wynn employment as the Superintendent of the District for an annual salary of $181,200.00, plus benefits, which include, but are not limited to: retirement contribution to the Illinois Downstate Teachers Retirement System ("TRS") and the Illinois Teachers' Health Insurance Security Fund ("THIS") pursuant to Section 16-152 and 16-152.1 of the Illinois Pension Code, a $400.00 per month automobile allowance, travel reimbursement associated with pre-approved out-of-District conference attendance, reimbursement for registration fees and expenses in connection with attendance at certain conferences, the payment of annual dues for the Superintendent's membership in the national, state, and local Association of School Administrators, the National Alliance of Black School Educators, and two local civic organizations of the Superintendent's choosing, Board-paid life insurance, hospitalization/major medical insurance, sick leave days, personal leave days, and twenty-five (25) days of vacation annually, exclusive of weekends and legal holidays.

53.   On April 8, 2008, Dr. Wynn accepted the Board's offer in exchange for the performance of his duties as Superintendent of the District.

54.   Dr. Wynn and the Board entered a valid, enforceable express contract on April 8, 2008, for a term of three years, between July 1, 2008 and June 30, 2011, for Dr. Wynn's employment as Superintendent for the District.

55.   The Board terminated Dr. Wynn on June 9, 2010, effective June 30, 2010, one year prior to the June 30, 2011 Contract termination date.

56.   At all times relevant hereto, Dr. Wynn has performed the duties of his position as the Superintendent for the District and is willing, ready and able to continue to perform his duties for the duration of the Contract.

57.   Under the terms of the Contract, the Board agreed to provide Dr. Wynn with performance goals and objectives, and to perform an annual evaluation of Dr. Wynn.

58.   Throughout the Contract term, Board breached the Contract by, among other things,

   a.   Failure to negotiate in good faith to establish goals and objectives;

   b.   Failure to approve Dr. Wynn's proposed performance goals until January 13, 2010;

   c.   terminating Dr. Wynn's Contract, effective June 30, 2010, refusing to make payment thereunder; and telling him that he will not be allowed after that date to serve as Superintendent of the District;

   d.   failure to perform an annual evaluation of Dr. Wynn for any year of his employment in further violation of the Illinois School Code;

   e.   failure to afford Dr. Wynn a pre- or post-deprivation hearing; and

   f.   refusing to pay the remaining balance due to Dr. Wynn under his Contract.

59.   At the time of his termination, Dr. Wynn's annual salary was $186,636.00, plus benefits.

60.   As a direct and proximate result of the Board's breach, Dr. Wynn has sustained damages, including the loss of income and benefits, as well as damages to his reputation.

WHEREFORE, Dr. Wynn respectfully requests that this Honorable Court find the existence of an express contract and enter a Judgment making the following findings and granting the following relief:

   A.   That this Honorable Court find that an express contract existed between Dr. Wynn and

the Board;

B.  That this Honorable Court find that the Board breached its contractual obligations to Dr. Wynn;

C.  That this Honorable Court award Dr. Wynn money reasonably calculated to compensate him for all consequential damages directly and proximately sustained as a result of the breach(es) of contract by Defendant;

D.  That this Honorable Court award prejudgment interest and costs;

E.  That this Honorable Court order the Board to expunge Dr. Wynn's personnel file;

F.  That this Honorable Court order the Board to pay the remaining contract balance to Dr. Wynn; and

G.  For such other relief as this Court deems just and equitable.

### COUNT III
### BREACH OF IMPLIED-IN-FACT CONTRACT
**Alternative to Count II, Breach of Express Contract**

61.  Plaintiff repeats and re-alleges Paragraphs 1-50 of this Complaint as though fully set forth herein as Paragraphs 1-50 of Count III of this Complaint.

62.  Dr. Wynn respectfully requests that if this Honorable Court does not find the existence of an express contract as set forth in Count II of this Complaint, that, in the alternative, this Honorable Court enter a Judgment making the finding that an implied-in-fact contract exists between Dr. Wynn and the Board for the term of July 1, 2008 to June 30, 2011.

63.  On April 8, 2008, the Board offered Dr. Wynn employment as the Superintendent of the District for an annual salary of $181,200.00, plus benefits, which include, but are not limited to: retirement contribution to the Illinois Downstate Teachers Retirement System ("TRS") and the Illinois Teachers' Health Insurance Security Fund ("THIS") pursuant to

14

Section 16-152 and 16-152.1 of the Illinois Pension Code, a $400.00 per month automobile allowance, travel reimbursement associated with pre-approved out-of-District conference attendance, reimbursement for registration fees and expenses in connection with attendance at certain conferences, the payment of annual dues for the Superintendent's membership in the national, state, and local Association of School Administrators, the National Alliance of Black School Educators, and two local civic organizations of the Superintendent's choosing, Board-paid life insurance, hospitalization/major medical insurance, sick leave days, personal leave days, and twenty-five (25) days of vacation annually, exclusive of weekends and legal holidays.

64. On April 8, 2008, Dr. Wynn accepted the Board's offer in exchange for the performance of his duties as Superintendent of the District.

65. Dr. Wynn and the Board entered a valid, enforceable contract on April 8, 2008, for a term of three years, between July 1, 2008 and June 30, 2011, for Dr. Wynn's employment as Superintendent for the District.

66. The Board terminated Dr. Wynn on June 9, 2010, effective June 30, 2010, one year prior to the June 30, 2011 Contract termination date.

67. At all times relevant hereto, Dr. Wynn has performed the duties of his position as the Superintendent for the District and is willing, ready and able to continue to perform his duties for the duration of the Contract.

68. Under the terms of the Contract, the Board agreed to provide Dr. Wynn with performance goals and objectives, and to perform an annual evaluation of Dr. Wynn.

69. Throughout the Contract term, the Board breached the implied Contract by, among other things,

    a.   Failure to negotiate in good faith to establish goals and objectives;

    b.   Failure to approve Dr. Wynn's proposed performance goals until January 13, 2010;

    c.   terminating Dr. Wynn's Contract, effective June 30, 2010, refusing to make payment thereunder; and telling him that he will not be allowed after that date to serve as Superintendent of the District;

    d.   failure to perform an annual evaluation of Dr. Wynn for any year of his employment in further violation of the Illinois School Code;

    e.   failure to afford Dr. Wynn a pre or post-deprivation hearing; and

    f.   refusing to pay the remaining balance due to Dr. Wynn under his Contract.

70.    At the time of his termination, Dr. Wynn's annual salary was $186,636.00, plus benefits.

71.    As a direct and proximate result of the Board's breach, Dr. Wynn has sustained damages, including the loss of income and benefits, as well as damages to his reputation, character, employability, and emotional wellbeing.

WHEREFORE, Dr. Wynn respectfully requests that this Honorable Court find the existence of an express contract and enter a Judgment making the following findings and granting the following relief:

    A.  That this Honorable Court find that an implied-in-fact contract existed between Dr. Wynn and the Board;

    B.  That this Honorable Court find that the Board breached its contractual obligations to Dr. Wynn;

    C.  That this Honorable Court award Dr. Wynn money reasonably calculated to compensate him for all consequential damages directly and proximately sustained as a result of the

breach(es) of contract by Defendant;

D.  That this Honorable Court award prejudgment interest and costs;

E.  That this Honorable Court order the Board to expunge Dr. Wynn's personnel file;

F.  That this Honorable Court order the Board to pay the remaining contract balance to Dr. Wynn; and

G.  For such other relief as this Court deems just and equitable.

## COUNT IV
## VIOLATION OF 42 U.S.C. §1983
### (Due Process Clause)

72.  Plaintiff repeats and re-alleges Paragraphs 1-71 of this Complaint as though fully set forth herein as Paragraphs 1-71 of Count IV of this Complaint.

73.  The Contract gives Dr. Wynn a property interest in his continued employment, constitutionally protected under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

74.  Dr. Wynn has a present entitlement to his position as Superintendent for the District by virtue of his Contract.

75.  Under the Fourteenth Amendment to the United States Constitution, prior to termination, Dr. Wynn is entitled to some form of hearing, both pre- and post-deprivation, and to receive notice of cause for termination, notice of hearing, a fair and impartial hearing, an opportunity to respond to the stated reasons for termination, and an opportunity to submit evidence relative to the stated reasons for termination.

76.  On or about June 11, 2010, the Board sent Dr. Wynn a letter purporting to terminate his contract for the third year of its term.

77.  Dr. Wynn requested of the Board, and was entitled to receive, a due process hearing in

compliance with the terms of his Contract and the United States Constitution.

78.    Defendant Board has failed to provide Dr. Wynn with either a pre- or post-deprivation hearing.

79.    By engaging in the conduct described in the preceding paragraphs, Defendant Board, acting under the color of law, knowingly, intentionally and egregiously violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

80.    As a result of the Board's unlawful actions, Dr. Wynn will suffer immediate and irreparable harm for which there is no adequate remedy at law.

WHEREFORE, Dr. Wynn requests that this Court enter a judgment in his favor and against the Defendant Board in an amount to be proved at trial, for his costs and attorneys' fees in pursuing this matter pursuant to 42 U.S.C. §1988, and for all such other relief as the Court deems proper, including:

A.    That this Honorable Court find that the Board failed to provide Dr. Wynn with a hearing, prior to terminating his property interest, thereby violating his due process rights;

B.    That this Honorable Court award Dr. Wynn money reasonably calculated to compensate him for all consequential damages directly and proximately sustained as a result of the breach(es) of contract by Defendant;

C.    That this Honorable Court award Dr. Wynn his attorney's fees and costs in pursuing this matter;

D.    For such other relief as this Court deems just and equitable.

## COUNT V
## VIOLATION OF THE ILLINOIS OPEN MEETINGS ACT

81.   Plaintiff repeats and re-alleges Paragraphs 1-80 of this Complaint as though fully set

       forth herein as Paragraphs 1-80 of Count V of this Complaint.

82.   On or about January 27, 2010, at a regularly scheduled meeting, scheduled for 6:00 p.m.,

       the Board intentionally and willfully delayed the start of the meeting until approximately

       8:00 p.m., and willfully refused to discuss Dr. Wynn's Contract.

83.   Section 120/2.02(a) of the Illinois Open Meetings Act provides:

       An agenda for each regular meeting shall be posted at the principle office of the
       public body and at the location where the meeting is to be held at least 48 hours in
       advance of the holding of the meeting.5 ILCS 120/2.02(a)

84.   The Board did not disclose on its agenda for the June 9, 2010 Board meeting that it would

       be discussing and voting on Dr. Wynn's employment.

85.   The Board's secretive and private action violated Dr. Wynn's due process rights. Dr.

       Wynn was denied a hearing prior to the Board's vote to terminate his employment.

86.   The Board's act to terminate Dr. Wynn at the June 9, 2010 Board meeting violated the

       Open Meetings Act because it was not set forth in the agenda for that meeting.

WHEREFORE, Dr. Wynn requests that this Court enter a judgment in his favor and against the

Defendant Board for equitable relief, including:

   A.   That this Honorable Court find that the Board violated the Illinois Open Meetings

         Act;

   B.   That this Honorable Court void and rescind the Board's termination of Dr. Wynn,

         based on the    Board's violation of the Illinois Open Meetings Act; and

   C.   For such other relief as this Court deems just and equitable.

19

DATED:          July 26, 2010

                                        Respectfully submitted,


                                        By:  s/ Elaine K.B. Siegel

                                            One of Plaintiff's Attorneys

OF COUNSEL:
Elaine K.B. Siegel
Claire A. Weinstein
Elaine K.B. Siegel & Associates, P.C.
39 South LaSalle Street, Suite 617
Chicago, Illinois 60603
(312) 236-8088