IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. RONALD J. WYNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 4655 |
| ) | |
| BOARD OF EDUCATION OF SCHOOL ) | |
| DISTRICT NO. 159, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On July 26, 2010, plaintiff Dr. Ronald J. Wynn ("Dr. Wynn") filed a complaint against defendant Board of Education of School District 159 ("Board") asserting claims for a declaratory judgment that the employment agreement between Dr. Wynn and the Board is valid and enforceable (Count I); breach of express contract (Count II); breach of implied-in-fact contract (Count III); violation of due process pursuant to 42 U.S.C. § 1983 (Count IV); and violation of the Illinois Open Meetings Act, 5 ILCS 120/2.02(a) (Count V). Currently before the court is the Board's "Motion to Dismiss Plaintiff's Complaint" (Dkt. No. 23). For the reasons explained below, the Board's Motion is granted in part and denied in part.

BACKGROUND

The following are the relevant facts of this case viewing the allegations in the complaint in the light most favorable to Dr. Wynn. *See Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

The Board is the elected governing body of Elementary School District 159 ("District"), which is located in Matteson, Cook County, Illinois. (Compl. ¶ 3.) In or around March 2008,

the Board voted to hire Dr. Wynn as the Superintendent for the District (*id.* ¶ 17), and in April 2008, Dr. Wynn and the Board entered into an employment contract ("Contract") for a period of three years, commencing July 1, 2008, and terminating July 30, 2011 (*id.* ¶ 8).

Paragraph 10 of the Contract addresses Dr. Wynn's performance goals:

This Contract is a performance-based contract. Student performance and academic improvement goals *shall be established* by the mutual agreement of the Superintendent and the Board, and *shall be* as approved and determined by the Board, by July 1, of every year of this contract, with the exception of this first contract year, for the 2008-2009 contract year, the Superintendent and Board shall establish goals no later than October 1, 2008. Said goals, once approved and determined by the Board, shall be incorporated into and made a part of this Contract. The Superintendent shall meet all of said goals during such time period as the Superintendent and the Board may agree. All of said goals *shall be* linked to student performance and academic improvement within the School District. The foregoing goals shall be used by the Board to measure the performance and effectiveness of the Superintendent, along with such other information as the Board may determine. This Agreement may not be extended unless all then-applicable goals have been attained.

(Contract ¶ 10 (attached as Ex. A to Compl.) (emphasis added).)

Dr. Wynn scheduled three meetings with the Board to develop his performance goals. (Compl. ¶ 26.) Those meetings were held in August, October, and December 2009. (*Id.*) The Board eventually approved the goals for Dr. Wynn on or about January 13, 2010. (*Id.* ¶ 27.) At the same time the Board approved Dr. Wynn's goals, the Board adopted a "Resolution Authoring Issuance of Notice of Intent Not to Renew Superintendent's Contract," which addressed Dr. Wynn's Contract with the Board. (*Id.* ¶ 28; *see also id.* at Ex. B.) Then, on or about January 28, 2010, Dr. Wynn submitted to the Board a notice of his request for an annual performance evaluation and his annual and long-term goals and objectives. (*Id.* ¶ 29; *see also id.* at Ex. C.)

On or about January 27, 2010, Dr. Wynn received a letter from the Board's counsel stating:

> Pursuant to action of the Board of Education of Elementary School District No. 159, Cook County, Illinois and the Superintendent's Contract ("Contract") governing your employment by the Board, this is to notify you that, to the extent that you have attained all applicable performance goals, it is the intent of the Board not to renew the Contract for either the 2010-11 contract year or the 2011-12 contract year.

(Compl. ¶ 30; *id.* at Ex. D.) Dr. Wynn then proceeded to perform the second year of his employment with no formal action by the Board to extend the term of the Contract. (*Id.* ¶ 31.)

On January 29, 2010, Dr. Wynn requested a meeting with the Board to discuss the Board's decision not to renew the Contract for either the 2010-2011 or the 2011-2012 contract years (*id.* ¶ 32), and he appeared before the Board on February 25, 2010 (*id.* ¶ 33). During that meeting, Dr. Wynn and his counsel addressed both the Board's claim that Dr. Wynn did not have a valid multi-year Contract and the Board's assertion that it could terminate Dr. Wynn's Contract at the end of the 2009-2010 Contract year. (*Id.* ¶ 33.) Dr. Wynn additionally expressed to the Board his ability and willingness to perform his duties under the Contract (*id.*), and the Board did not raise any performance deficiencies with Dr. Wynn (*id.*).

In a letter dated March 5, 2010, the Board's counsel provided Dr. Wynn with a list of "Causes for Dismissal if Not Remedied" and a list of "Directives to Remedy." (*Id.* ¶ 34; *see also id.* at Ex. F.) Then, on or around March 18, 2010, the Board voted to suspend Dr. Wynn indefinitely (*id.* ¶ 35); the Agenda for the Board's March 18, 2010 meeting did not list Dr. Wynn's employment as an agenda item (*id.*). The Board scheduled a dismissal hearing for April 19, 2010, but later rescheduled the hearing for April 28, 2010. (*Id.* ¶¶ 37, 39.)

On or around March 24, 2010, the Board approved a "Written Notice of Charges for the Dismissal of Dr. Ronald J. Wynn as Superintendent of Schools for Elementary School District Number 159," which stated, *inter alia*, that "by his conduct, Dr. Wynn has violated the terms and

conditions of his employment contract thereby providing good and just cause for his dismissal." (*Id.* ¶ 36; *id.* at Ex. G.)

In a letter dated April 1, 2010, Dr. Wynn received a copy of a "Bill of Particulars for the Dismissal of Dr. Ronald J. Wynn as Superintendent of Schools for Elementary School District Number 159" from the Board's counsel. (*Id.* ¶ 38; *id.* at Ex. H.) On or around April 26, 2010, the Board continued the dismissal hearing of Dr. Wynn indefinitely. (*Id.* ¶ 40.) Then, in a letter dated April 29, 2010, counsel for the Board notified Dr. Wynn's counsel that the Board had rescinded Dr. Wynn's suspension and was "requiring him to return to work on Monday, May 3, 2010." (*Id.* ¶ 41; *id.* at Ex. I.) According to the letter, Dr. Wynn would be returning to work "in an administrative capacity"–not as the Superintendent–but he would continue receiving the same salary and benefits under his Contract. (*Id.* ¶ 41; *id.* at Ex. I.)

During a June 9, 2010 meeting, the Board voted to non-renew Dr. Wynn's Contract for the 2010-2011 school year (*id.* ¶¶ 45-47), and the Board's counsel informed Dr. Wynn's counsel of that decision in a letter dated June 11, 2010 (*id.* ¶ 46; *id.* at Ex. K). Before the June 9, 2010 vote, Dr. Wynn was not notified that the Board would be taking such an action with respect to his employment at the June 9, 2010 meeting. (*Id.* ¶ 47.) Nor was Dr. Wynn's employment an agenda item for the June 9, 2010 meeting. (*Id.*)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. College Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor. *Id.*

ANALYSIS

I. Dr. Wynn's § 1983 Claim

Because Dr. Wynn's due process claim under 42 U.S.C. § 1983 is the basis for this court's original jurisdiction, the court addresses that claim first. Under § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Dr. Wynn contends that he had a property interest in his continued employment in the District and that the Board violated his due process rights secured by the Fourteenth Amendment to the U.S. Constitution by terminating his employment without a hearing.

According to the Seventh Circuit, "[i]n any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists." *Cole*, 634 F.3d at 904. To establish "a protectable property interest in a benefit, such as

5

continued employment," the plaintiff must demonstrate "more than an 'abstract need or desire for it' and more than a 'unilateral expectation of it.'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Rather, "a plaintiff must have a 'legitimate claim of entitlement to it.'" *Id.* (quoting *Roth*, 408 U.S. at 577).

"The determination whether a particular job action against a public employee implicates a constitutionally protected property interest is a question of law." *Id.* "State law defines the property interest, and federal law defines the process that is due." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 494 (7th Cir. 2010). In this case, because Dr. Wynn was employed in Illinois, the court applies Illinois law to first determine whether Dr. Wynn has pleaded sufficient facts to demonstrate that he had a protectable property interest in his continued employment with the District. *Covell v. Menkis*, 595 F.3d 673, 676 (7th Cir. 2010).

"Under Illinois law, a person has a property interest in his job where he has a legitimate expectation of continued employment based on a legitimate claim of entitlement." *Id.* A plaintiff has a "a legitimate expectation of continued employment" if he can "show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." *Id.* (quoting *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007)). Here, Dr. Wynn argues that he had a legitimate expectation of continued employment based either in an express or an implied in fact contract.

A. Protectable Property Interested Based on an Express Contract

"A school board as an entity is a governmental agency, or 'municipal corporation,' created by the legislature and subject to its will." *E. St. Louis Fed'n of Teachers, Local 1220 v. E. St. Louis Sch. Dist. No. 189*, 687 N.E.2d 1050, 1059 (Ill. 1997). A school board, therefore,

6

"must act within its statutory authority and has no inherent powers beyond those specifically granted." *Evans v. Benjamin Sch. Dist. No. 25*, 480 N.E.2d 1380, 1385 (Ill. 1985). "Statutes conferring authority on a board must be considered not only as a grant of power, but as a limitation thereof." *Id.* When a school board takes an action that is prohibited by law or otherwise beyond the board's lawful authority, that action is ultra vires and void. *Id.* at 1386. "[P]ersons dealing with municipal corporations are charged with the knowledge of the limitations of the power of that corporation for any contract attempted to be entered into by any of its officials." *Cannizzo v. Berwyn Twp. 708 Cmty. Mental Health Bd.*, 741 N.E.2d 1067, 1074 (Ill. App. Ct. 2000) (internal quotations omitted) (citing *Metro. Water Reclamation Dist. v. Civil Serv. Bd.*, 684 N.E.2d 786, 790 (Ill. App. Ct. 1997)).

Under § 10-23.8 of the Illinois School Code, "school districts may only employ a superintendent under either a contract for a period not exceeding one year or a performance-based contract for a period not exceeding 5 years." 105 ILCS 5/10-23.8. If the contract is "performance-based," it must comply with certain statutory criteria:

> Performance-based contracts *shall be linked* to student performance and academic improvement within the schools of the district. No performance-based contract shall be extended or rolled-over prior to its scheduled expiration unless all the performance and improvement goals *contained in the contract* have been met. *Each performance-based contract shall include the goals and indicators of student performance and academic improvement determined and used by the local school board to measure the performance and effectiveness of the superintendent and such other information as the local school board may determine.*

*Id.* (emphasis added).

In this case, the Board argues that Dr. Wynn "did not have any performance goals at the time of the adoption of [the] [C]ontract." (Dkt. No. 24 ("Board's Mem.") at 5.) As a result, the Board contends, the Contract was not a "performance-based" contract as defined in § 5/10-23.8 of

7

the Illinois School Code and "could only exist for one year at a time." (*Id.*) In other words, the Board did not have the legal authority to enter into a multi-year contract that lacked performance goals and indicators, thereby rending the Contract void ab initio. (*Id.* at 6.)

Dr. Wynn, in response, argues that the Agreement comports with the requirements of § 5/10-23.8 and accordingly was a valid, performance-based contract. Specifically, based on the court's interpretation of Dr. Wynn's Response and Sur-Reply, Dr. Wynn appears to contend that the Contract is valid for two primary reasons. First, Dr. Wynn interprets § 5/10-23.8 of the Illinois School Code as only requiring that a multi-year, performance-based superintendent contract be "linked to student performance and academic improvement within the School District." (Dkt. No. 34 ("Wynn's Sur-Reply") at 4.) According to Dr. Wynn, by expressly stating that the goals "shall be linked to student performance and academic improvement," the Contract is "linked to student performance and academic improvement," and thus satisfies the School Code. (*Id.* at 4-5.)

Second, Dr. Wynn argues that even if the School Code requires the identification of specific goals in the employment agreement, a performance-based contract need not specify the goals "on the date of its execution." (*Id.* at 6.) Instead, as long as the performance goals are approved at some point prior to the agreement's expiration, the agreement is consistent with § 5/10-23.8. (Dkt. No. 29 ("Wynn's Resp.") at 6-7.) Here, because the Board allegedly approved Dr. Wynn's goals in January 2010–before the Contract was scheduled to terminate–Dr. Wynn contends that the Contract comports with § 5/10-23.8. (*Id.*)

Resolution of the Board's Motion, therefore, turns on whether § 5/10-23.8 of the Illinois School Code requires that a multi-year, superintendent agreement actually include the superintendent's goals and indicators, and if so, whether those goals and indicators must be identified in the agreement at the time of the agreement's adoption. Because the Illinois Supreme Court has yet to address these statutory interpretation issues,[1] this court must "predict what the Illinois Supreme Court would hold." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 683 (7th Cir. 2007).

"Under Illinois law, statutes are to be interpreted according to their plain language affording them their plain and ordinary meaning." *Maher v. Harris Trust & Sav. Bank*, 506 F.3d 560, 562 (7th Cir. 2007) (citing *Moore v. Greene*, 848 N.E.2d 1015, 1020-21 (Ill. 2006)). When interpreting the meaning of statutory language, the court's "primary objective is to ascertain and give effect to the intent of the legislature." *In re Consolidated Objections to Tax Levies of Sch. Dist. No. 205*, 739 N.E.2d 508, 512 (Ill. 2000). Furthermore, "where the statutory language is clear and unambiguous, it will be given effect without resorting to other aids of construction." *Id.*

Here, this court finds that Dr. Wynn's Contract violates § 5/10-23.8 of the School Code. First, contrary Dr. Wynn's interpretation of the Code, § 5/10-23.8 does not only require that a performance-based contract "be linked to student performance and academic improvement." It

---

[1] Dr. Wynn argues that the Illinois Appellate Court's decision in *Board of Education v. Jackson*, 927 N.E.2d 206 (Ill. App. Ct. 2010), is dispositive. As discussed below, however, the superintendent agreement at issue in *Jackson* identified certain performance goals, and the school board did not argue on appeal that those goals did not satisfy § 5/10-23.8. Consequently, the issues in *Jackson* are distinguishable from those currently presented to the court in the Board's Motion.

9

additionally states that the performance goals and indicators must be included in the agreement: "Each performance-based contract *shall include* the goals and indicators of student performance and academic improvement . . . ." 105 ILCS 5/10-23.8 (emphasis added). Accordingly, the Contract's general acknowledgment that "[s]tudent performance and academic improvement goals shall be linked to student performance and academic improvement," standing alone, does not satisfy the School Code; the Contract instead must actually identify "the goals and indicators of student performance and academic improvement." The Contract, as originally executed, unambiguously does not contain such goals but rather explicitly states that the goals "*shall be established* by the mutual agreement of the Superintendent and the Board." (Contract ¶ 10 (emphasis added).) Indeed, based on Dr. Wynn's allegations, the Board did not approve Dr. Wynn's goals until January 2010. (Compl. ¶ 27 (emphasis added).)

The next question, therefore, is whether the requisite goals must be identified at the agreement's execution or can later be incorporated by reference into the agreement as Dr. Wynn contends. As quoted above, § 5/10-23.8 provides that a multi-year, superintendent employment agreement cannot be "extended or rolled-over prior to its scheduled expiration unless all the performance and improvement goals *contained in the contract* have been met." 105 ILCS 5/10-23.8 (emphasis added). Additionally, according to § 5/10-23.8, the goals and indicators outlined in the agreement provide the criteria for "measur[ing] the performance and effectiveness of the superintendent." *Id.*

If, as Dr. Wynn contends, § 5/10-23.8 only requires that a school board approve the goals before the termination of the employment agreement, the board could not use those goals to assess the effectiveness of the superintendent and to determine whether the superintendent's employment should be extended after the expiration of the agreement. In other words, the board

10

would be unable to determine whether "all the performance and improvement goals contained in the contract have been met" if the goals only need be adopted at some point before the contract's termination. The court, therefore, agrees with the Board that the plain language of the statute requires that a multi-year, superintendent agreement include the goals and indicators of student performance at the time of the agreement's execution.

*Board of Education v. Jackson*, 927 N.E.2d 206 (Ill. App. Ct. 2010), cited by Dr. Wynn, does not support the opposite conclusion. In *Jackson*, the superintendent's original employment agreement provided:

> Annually, the Superintendent, with the assistance of his administrative team, shall: (1) evaluate student performance, which shall include but not be limited to: student performance on standardized tests such as performance on the Illinois standardized tests, completion of the curriculum, attendance and drop-out rates; (2) review the curriculum and instructional services; and (3) report to the BOARD as to his findings as to (a) student performance and (b) recommendations, if any, for curriculum or instructional changes as a result of his evaluation of student performance.
>
> The presentation of the report shall constitute the achievement of the goals and indicators of student performance and academic improvement as required by 105 ILCS 5/10-23.8 of the Illinois School Code.

*Jackson*, 927 N.E.2d at 208. This provision was incorporated into all subsequent amendments to the superintendent's employment agreement. *Id.* at 208-10. On appeal, the school board did not contend that the goals outlined in the above provision failed to comply with § 5/10-23.8. *Id.* at 215. Thus, contrary to Dr. Wynn's contention, *Jackson* did not address the precise issues presented in the Board's Motion; namely, whether § 5/10-23.8 requires that a multi-year, superintendent employment agreement contain "the goals and indicators of student performance and academic improvement" from the inception of the agreement. The court has considered Dr. Wynn's additional arguments in support of his interpretation of the statute and finds that they similarly lack merit.

In this case, the plain language of the Contract states that the goals "shall be" established, and based on Dr. Wynn's allegations, the Board did not adopt any performance goals for Dr. Wynn until January 2010–over a year after the parties executed the Contract. Based on this court's interpretation of § 5/10-23.8, Dr. Wynn's Contract does not comply with the Illinois School Code.

As the Seventh Circuit has instructed, "There is no question that contracts which are in violation of law are null and void." *Shlay v. Montgomery*, 802 F.2d 918, 922 (7th Cir. 1986). Moreover, null and void contracts "are incapable of creating property interests since such . . . contract[s] cannot conceivably give rise to a legitimate expectation of continued employment." *Id.* Thus, as in this case, "where a career employment agreement would 'contravene the express language' of the municipal code, it is invalid and cannot create a property interest." *Pleva v. Norquist*, 195 F.3d 905, 915 (7th Cir. 1999) (quoting *Shlay*, 802 F.2d at 921-22).[2] Dr. Wynn, therefore, cannot prove that he had a protectable property interest in continued employment based on the Contract.

2.     Protectable Property Interest Based on an Implied in Fact Contract

Dr. Wynn's argument that he had a protectable property interest in continued employment based on an implied in fact contract with the Board similarly fails. Under Illinois law, "[a] contract implied in fact is an actual contract." *Owen Wagener & Co. v. U.S. Bank*, 697 N.E.2d

---

[2] Dr. Wynn also argues that this court should not grant the Board's Motion to Dismiss because the goals the Board allegedly passed in January 2010 currently are not in Dr. Wynn's possession. According to Dr. Wynn, "[t]he Court cannot adjudicate central issues raised in this case without reference to the goals, and the case should proceed to discovery." (Wynn's Sur-Reply 2.) The court disagrees. Because the court finds that the Illinois School Code unambiguously requires that multi-year, superintendent agreements contain, from their inception, "the goals and indicators of student performance and academic improvement," the performance goals allegedly adopted by the Board in January 2010 do not impact this court's determination that the Contract, at its execution, did not comply with the Code.

902, 907 (Ill. App. Ct. 1998) (quoting *Barry Mogul & Assocs., Inc. v. Terrestris Dev. Co.*, 643 N.E.2d 245, 251 (1994)). In *Owen Wagener*, the Illinois Appellate Court explained that "the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either written or oral, while in the latter their agreement is arrived at by a consideration of their acts and conduct." *Id.* (quoting *Barry Mogul*, 643 N.E.2d at 251). Like an express contract, "[i]mplied contracts with municipalities that are *ultra vires*, contrary to statutes, are unenforceable." *McMahon v. City of Chi.*, 789 N.E.2d 347, 352 (Ill. App. Ct. 2003).

Again, as discussed above, the Board did not have the authority to enter into a multi-year, superintendent employment contract that lacked performance goals. Nor can Dr. Wynn rely on the representations of government officials–here, the Board–who are not authorized to make such representations to create a protectable property interest in continued employment. *Crull*, 384 F.3d at 464 ("It is 'firmly established that the mutually explicit understandings that constitute property interests under the holding of *Perry* [*v. Sindermann*, 408 U.S. 593 (1972),] cannot be based on the representations of government officials who are not authorized to make such representations.'" (quoting *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1334 (7th Cir. 1989))). Consequently, for the same reasons that Dr. Wynn does not have an protectable property interest in continued employment based on an express contract, he similarly lacks such a property interest based on an implied in fact contract.

Although the court finds that Dr. Wynn does not have a protectable property interest in continued employment in the District based on either an express or an implied in fact contract, the court makes no findings as to the severability of the Contract's duration provision–an issue neither party has addressed–nor does the court make any findings with respect to whether Dr.

13

Wynn ultimately may be able to state a claim against the Board for breach of either an express or implied in fact contract. The court's determination in this opinion is limited to finding that Dr. Wynn did not have a protectable property interest in continued employment because, under § 5/10-23.8 of the Illinois School Code, the Board lacked the authority to enter into a multi-year, superintendent employment agreement that did not articulate performance goals.

II.     Dr. Wynn's State-Law Claims (Counts I, II, III, and V)

In his complaint, Dr. Wynn also brings state-law claims against the Board for a declaratory judgment that the employment agreement between Dr. Wynn and the Board is valid and enforceable (Count I); breach of express contract (Count II); breach of implied in fact contract (Count III); and violation of the Illinois Open Meetings Act, 5 ILCS 120/2.02(a) (Count V). This court has dismissed Dr. Wynn's federal claim, which is the basis for this court's original jurisdiction over this action, and therefore, must decide whether to exercise its supplemental jurisdiction over Dr. Wynn's state-law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ."). "Normally, when 'all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.'" *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). The three exceptions to this rule are "(1) 'the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court'; (2) 'substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort'; or (3) '. . . it is absolutely clear how the pendent claims can be decided.'" *Id.* at 514-15. Because none of these exceptions applies, the court declines to

exercise supplemental jurisdiction in this case. Dr. Wynn's state-law claims accordingly are dismissed without prejudice.

## CONCLUSION

For the reasons explained above, the Board's "Motion to Dismiss Plaintiff's Complaint" (Dkt. No. 23) is granted in part and denied in part. Because Dr. Wynn did not have a protectable property interest in continued employment as a matter of law, his claim against the Board for violation of his constitutional due process rights under 42 U.S.C. § 1983 (Count IV) is dismissed with prejudice. Additionally, pursuant to 28 U.S.C. § 1367(c), this court declines to exercise its supplemental jurisdiction over Dr. Wynn's remaining state-law claims for declaratory judgment that the employment agreement between Dr. Wynn and the Board is valid and enforceable (Count I); breach of express contract (Count II); breach of implied in fact contract (Count III); and violation of the Illinois Open Meetings Act, 5 ILCS 120/2.02(a) (Count V). Those claims accordingly are dismissed without prejudice.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: May 17, 2011